**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23235-ALTMAN/Lett**

**LISSETTE GORDON**,

*Plaintiff*,

*v.*

**TRANS UNION LLC**,

*Defendant*.
________________________________/

**ORDER GRANTING MOTION FOR JUDGMENT ON PLEADINGS**

Our Plaintiff, Lissette Gordon, alleges that the Defendant, Trans Union LLC ("Trans Union"), violated two sections of the Fair Credit Reporting Act (the "FCRA"): 15 U.S.C. §§ 1681e(b) and 1681i(a). *See* Amended Complaint [ECF No. 26] ¶¶ 37–89.[1] Trans Union has filed a Motion for Judgment on the Pleadings (the "MJP") [ECF No. 43], which is now fully briefed and ripe for adjudication. *See* Response in Opposition to MJP (the "Response") [ECF No. 44]; Reply in Support of MJP [ECF No. 46]. After careful review, we **GRANT** the MJP.

**THE FACTS**

Trans Union is a consumer-reporting agency that "disburses consumer [credit] reports to third parties for monetary compensation." Amended Complaint ¶ 7. On March 6, 2024, Gordon "obtained a copy of her [credit report] from annualcreditreport.com in which she noticed several flaws in the completeness and accuracy of the data provided by Trans Union." *Id.* ¶ 1. On March 22, 2024, Gordon mailed Trans Union a dispute letter challenging "the completeness and accuracy" with which Trans Union reported the following accounts: "Barclays Bank Delaware, Capital One, CitiCards CBNA,

[1] Gordon voluntarily dismissed Trans Union's co-defendant, LVNV Funding LLC ("LVNV"), as a Defendant in this action on May 18, 2026. *See* Stipulation of Dismissal as to LVNV [ECF No. 57].

Credit One Bank, Discover Bank, Sync Bank / Sams Club, Tropical FCU and Wells Fargo Card Services" (the "Disputed Accounts"). *Id.* ¶ 2. Gordon claims that Trans Union inaccurately reported the following information regarding the Disputed Accounts:

> 1) inaccurate account types 2) inaccurate loan types 3) inaccurate balances 4) inaccurate payments received 5) inaccurate last payments made 6) inaccurate date of first delinquencies 7) inaccurate and incomplete payment and balance histories 8) inaccurate and incomplete amounts paid 9) inaccurate and incomplete scheduled payments 10) missing compliance condition codes and 11) inaccurately reporting the accounts as PLR which is profit loss write off when the accounts were current and paid on time[.]

*Id.* ¶ 13. Gordon "does not recall ever receiving the results of the reinvestigation from [Trans Union] in regard to her [ ] March 22, 2024, dispute letter[.]" *Id.* ¶ 15.

Gordon obtained a second credit report on March 27, 2025. *See id.* ¶ 1. And, on April 28, 2025, she sent another dispute letter challenging the accuracy of the same Disputed accounts, "but this time, also disputed two (2) tradelines reported by [LVNV] which [Gordon] had previously settled in separate litigation with [ ] LVNV [the 'LVNV Accounts']." *Id.* ¶ 24; *see also* Confidential Settlement Agreement [ECF No. 43-3].[2] Trans Union "forwarded [Gordon's] disputes to the appropriate furnishers" but "failed to conduct [its] own reinvestigation independent of any" furnisher. Amended Complaint ¶ 25. "On May 28, 2025, [Trans Union] mailed [Gordon] the results of the reinvestigation, stating that the account(s) were accurate." *Id.* ¶ 26. Trans Union "provided these results to [Gordon] despite having multiple notices of the inaccuracies and being on specific notice that [ ] LVNV and [Gordon] had settled the [LVNV Accounts] in Court . . . even when [Gordon] provided the case number, which could have been easily looked up and verified." *Id.* ¶ 27.

[2] We may consider the contents of the Confidential Settlement Agreement because Gordon repeatedly references it in her Amended Complaint, it's central to her claims, and its contents are beyond dispute. *See Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023) ("Under the incorporation-by-reference doctrine, a court may consider evidence attached to a [Motion for Judgment on the Pleadings] without converting the motion into one for summary judgment if (1) the plaintiff refers to certain documents in the complaint, (2) those documents are central to the plaintiff's claim, and (3) the documents' contents are undisputed." (cleaned up)).

According to Gordon, Trans Union's purported failure to remedy the alleged inaccuracies in her credit file show that Trans Union "failed to conduct any reasonable reinvestigation" regarding her accounts and "failed to have reasonable procedures in place pertaining to 1) ensuring maximum possible accuracy of the information reported about [Gordon] and 2) the reinvestigation of disputed information in [Gordon's] credit file." *Id.* ¶ 29. As a result, Gordon has suffered "1) denied credit applications 2) cost of postage fees 3) reputational harm 4) high blood pressure 5) headaches 6) insomnia 7) anxiety and 8) depression." *Id.* ¶ 30.

## THE LAW

### I. Judgment on the Pleadings

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Ibid.*

### II. Violations of the FCRA

Section 1681e(b) of the FCRA provides that, in preparing a consumer report, a consumer-reporting agency "shall follow reasonable procedures to assure maximum possible accuracy" about an individual. 15 U.S.C. § 1681e(b). Section 1681i(a) states that, "if the completeness or accuracy of any item of information contained in a consumer's file . . . is disputed by the consumer[,] . . . the agency

shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is accurate." *Id.* § 1681i(a)(1)(A).

To state a claim under § 1681e(b), a plaintiff must show that a consumer-reporting agency's report "[(1)] contained factually inaccurate information, [(2)] that the procedures it took in preparing and distributing the report weren't 'reasonable,' and [(3)] that damages followed as a result." *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (cleaned up).

To prevail under § 1681i(a), a plaintiff must show that: (1) the plaintiff disputed the inclusion of factually inaccurate information in the plaintiff's file; (2) the consumer-reporting agency's reinvestigation of the disputed information was not reasonable; and (3) the plaintiff suffered damages as a result of the agency's failure to conduct a reasonable reinvestigation. *See ibid.* ("The elements of a claim under § 1681i—which focuses on the consumer's credit 'file' rather than his credit 'report'—are the same, except that the plaintiff needn't show that the agency prepared and distributed a report.").

## ANALYSIS

Gordon claims that Trans Union violated the FCRA's requirement that consumer-reporting agencies (1) "employ reasonable procedures to assure maximum possible accuracy of the information concerning the individual" when preparing credit reports, 15 U.S.C. § 1681e(b), and (2) conduct a "reasonable reinvestigation" of disputed information when notified of a potential inaccuracy, *id.* § 1681i(a). She alleges that Trans Union violated these requirements with respect to two different groups of accounts. *First*, she insists that Trans Union inaccurately reported information related to her Disputed Accounts. *See* Amended Complaint ¶ 12–13 (identifying the Disputed Accounts and alleged inaccuracies). *Second*, she claims that Trans Union failed to reasonably reinvestigate the status of her LVNV Accounts after she sent a dispute letter explaining that she'd settled those accounts in court. *See id.* ¶ 27 ("[Trans Union had] multiple notices of the inaccuracies [regarding the LVNV Accounts]

and [was] on specific notice that Defendant LVNV and [Gordon] had settled the account[s] in Court[.]"). We'll address each claim in turn.

## I. The Disputed Accounts

Trans Union first argues that it's entitled to judgment on the pleadings as to Gordon's Disputed-Accounts-based § 1681e(b) claim because Gordon "has failed to sufficiently allege an inaccuracy" in either of her credit reports. MJP at 7; *see also id.* at 9 ("[Gordon's] amended Complaint asserts that Trans Union reported 'inaccurate and incomplete' data about the Eight Disputed Accounts, but she doesn't plead with any factual detail what those inaccuracies are."). We agree.

To satisfy her burden under § 1681e(b), Gordon must allege that Trans Union issued a report that contained inaccurate information. *See Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020) ("To establish a prima facie violation of the FCRA, a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information. If the plaintiff fails to satisfy this initial burden, he as a matter of law, has not established a violation of the FRCA." (cleaned up)). But "[b]lanket and conclusory assertions that a report was inaccurate are insufficient to satisfy a plaintiff's burden." *Gordon v. Equifax Info. Servs. LLC*, 2025 WL 2765236, at *3 (S.D. Fla. Sept. 29, 2025) (Bloom, J.). And "blanket and conclusory" allegations are exactly what Gordon has advanced here. She vaguely tells us that Trans Union reported, as to the eight Disputed Accounts, the following:

> 1) inaccurate account types 2) inaccurate loan types 3) inaccurate balances 4) inaccurate payments received 5) inaccurate last payments made 6) inaccurate date of first delinquencies 7) inaccurate and incomplete payment and balance histories 8) inaccurate and incomplete amounts paid 9) inaccurate and incomplete scheduled payments 10) missing compliance condition codes and 11) inaccurately reporting the accounts as PLR which is profit loss write off when the accounts were current and paid on time

Amended Complaint ¶ 13. But she doesn't plead *any* factual detail as to what the alleged inaccuracies were, which inaccuracies were tied to which accounts, or what information Trans Union should've reported instead. That's not good enough.

We're not the only ones to take issue with how Gordon has pleaded her § 1681e(b) claims. In fact, Judge Bloom of our Court dismissed Gordon's nearly identical complaint against Equifax because, there too, Gordon utterly failed to plead with specificity how Equifax had reported her accounts inaccurately. *See Gordon*, 2025 WL 2765236, at *4 ("Here, Gordon fails to factually allege how her credit report is inaccurate and makes solely conclusory allegations as to the unreasonableness of Equifax's investigative procedures. In the Amended Complaint, Gordon provides a list of blanket inaccurate information and data reported by Equifax. However, . . . Gordon claims that there are inaccuracies in her seven accounts yet fails to plead with any factual detail what those inaccuracies are. It is unclear whether Gordon seeks to claim that each account contains inaccurate information, and, more importantly, how the report is inaccurate. . . . Accordingly, the Court finds that Gordon has not satisfied her initial burden to allege an inaccuracy in Equifax's reporting." (cleaned up)). For those same reasons, we find that Gordon's § 1681e(b) claim against Trans Union is insufficient.

Gordon defends her pleading by repeating the same conclusory claims she advanced in her Amended Complaint. She tells us that she's sufficiently pled inaccuracies by alleging that Trans Union "reported accounts as 'profit/loss write-off' (PLR) while simultaneously reporting those same accounts as 'current and paid as agreed'" and insists that "[t]his allegation alone presents a direct factual inconsistency" on the face of her credit report. Response at 3–4. Two problems with this. *One*, Gordon misstates her own Amended Complaint. As Trans Union observes:

> [Gordon] has made the rather curious decision to contradict her allegations in the Complaint. Specifically, [Gordon's Response] argues that Trans Union's reporting of the Eight Accounts as "profit/loss write-off" conflicts with its simultaneous reporting of those accounts as "current and paid as agreed," which she claims "presents a direct factual inconsistency." However, her Complaint does not allege that Trans Union reported the Eight Accounts as "current and paid as agreed," but instead states that

> the accounts "were current and paid on time." Further, her Complaint does not include any allegations of inconsistent reporting among the Eight Accounts and instead makes general broad assertions about the accuracy of the data reported across all Eight Accounts.

Reply at 2 (cleaned up). We won't allow Gordon to advance an "inconsistent reporting" theory that's completely absent from her Amended Complaint. *Two*, and in any event, Gordon's "profit/loss write-off" argument is insufficiently pled. She never tells us which accounts were improperly labeled as "PLR" or even on which report she's basing this challenge. Response at 3; *see also Daley v. Trans Union LLC*, 2023 WL 7495089, at *4 (S.D. Fla. Nov. 13, 2023) (Bloom, J.) (dismissing FCRA claim where plaintiff failed to specify which account included a claimed inaccuracy).[3]

For all these reasons, Gordon hasn't sufficiently identified an actionable inaccuracy as to any of the Disputed Accounts or credit reports and, therefore, hasn't stated a claim under § 1681e(b). And because she's failed to plead with specificity an underlying inaccuracy regarding the Disputed Accounts, she's also failed to state a claim under § 1681i(a) as to those accounts. *See McWhorter v. Experian Servs. Corp.*, 2025 WL 2604621, at *3 (11th Cir. Sept. 9, 2025) ("To make out a claim under § 1681i, the plaintiff must show that the agency's file contained factually inaccurate information[.]"); *see also Losch*, 995 F.3d at 944 ("The elements of a claim under § 1681i—which focuses on the consumer's credit 'file' rather than his credit 'report'—are the same, except that the plaintiff needn't show that the agency prepared and distributed a report."); *id.* at 944–45 ("Before addressing whether Experian's report-preparation procedures and reinvestigation were reasonable, a prefatory matter: Has Losch shown that his file contained, or that Experian reported, factually inaccurate information?").

[3] Gordon also defends her Amended Complaint by arguing that she "identified reporting deficiencies including missing or incomplete data fields such as payment histories and compliance condition codes." Response at 4. But this argument suffers from the same deficiency we've identified in the rest of her Amended Complaint, because it fails to allege with any specificity which accounts are missing information or what data should've been reported.

## II. The LVNV Accounts

As to the LVNV Accounts, Gordon claims that Trans Union failed to conduct a "reasonable reinvestigation" of inaccurate data in her credit file, despite being on notice that the LVNV Accounts had been settled in court. Amended Complaint ¶ 54; *see also* Second Dispute Letter [ECF No. 26-4] at 3–4 (explaining that the LVNV Accounts had been "settled in Court"). Gordon tells us that Trans Union "forwarded [Gordon's] disputes to the appropriate furnisher[ ]" who "verified the accounts as accurate," but that Trans Union "failed to conduct [its] own reinvestigation independent" of the furnisher's investigation. Amended Complaint ¶ 25. On May 28, 2025, Trans Union mailed Gordon "the results of the reinvestigation, stating that the account(s) were accurate." *Id.* ¶ 26; *see also id.* ¶ 52 ("In spite of receiving these letters, referring to the same inaccurate data report on her credit file, [Trans Union] made no changes whatsoever to [Gordon's] credit report and continued to report the inaccurate data.").[4]

Trans Union argues that it's entitled to judgment on the pleadings with respect to Gordon's LVNV-Account-related claims because "consumer reporting agencies do not have an independent duty to investigate disputes related to settlement agreements . . . Thus, Trans Union did not have an independent duty to determine LVNV's obligations under the April 3, 2025, Settlement Agreement." MJP at 12 (cleaned up)). Gordon answers that Trans Union didn't need to "interpret or enforce a settlement agreement" but simply needed to do more than "blindly parrot the furnisher's response." Response at 5. Specifically, Gordon believes that Trans Union should've, at the very least, "check[ed] publicly available federal court dockets" in response to Gordon's dispute letter. Here, too, Trans Union has the stronger argument.

[4] Although Trans Union's May 29, 2025 Reinvestigation Letter is referenced in the Complaint, neither party attached it either to the pleadings or to the MJP briefing. So, we'll assume (for now) that Trans Union "made no changes whatsoever to [Gordon's] credit report" in response to the Second Dispute Letter "and continued to report the inaccurate data," as Gordon alleged in the Amended Complaint. Complaint ¶ 52.

Section 1681i(a)(1) provides that, if a consumer disputes "the completeness or accuracy of any item" in her credit file, the consumer-reporting agency must "conduct a reasonable investigation to determine whether the disputed information is inaccurate[.]" A reasonable reinvestigation, however, "does not require [consumer-reporting agencies] to resolve legal disputes about the validity of the underlying debts they report." *Losch*, 995 F.3d at 946 (quoting *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015)); *see also Jackson v. Bank of Am.*, 579 F. Supp. 3d 1295, 1297 (N.D. Ala. 2022) (Proctor, J.) (holding that a consumer-reporting agency didn't have to determine the furnisher's obligations under a settlement agreement with the plaintiff).

After careful review, we agree with Trans Union that it didn't need to interpret the legal effect of the Confidential Settlement Agreement. As part of the Confidential Settlement Agreement, LVNV agreed to "request that the national credit reporting agencies [ ] to which it reports delete LVNV's reporting of the trade line(s) associated with the Accounts," once certain contractual terms were satisfied. Confidential Settlement Agreement at 3. Based on this language, LVNV—not Trans Union—was responsible for determining whether Gordon's obligations had been met. And, if the obligation *had* been satisfied, it was on LVNV (not Trans Union) to request deletion of the tradelines. The parties' compliance with the Confidential Settlement Agreement *plainly* involved a legal dispute—indeed, Gordon *sued* LVNV *in this case* for its alleged non-compliance with the Confidential Settlement Agreement. *See* Amended Complaint ¶¶ 18–21 ("Under the Agreement, Defendant LVNV covenanted that it would promptly request deletion of its tradelines associated with Plaintiff's account(s) by submitting a Universal Data Form ('UDF') to the national credit reporting agencies. . . . Plaintiff fully performed her obligations under the Agreement[.] . . . Despite this, Defendant LVNV failed to submit its deletion request promptly."). Trans Union had no obligation to resolve this dispute, or to interpret the parties' agreement, to determine the validity of Gordon's reported LVNV debt.

Gordon insists that she wasn't asking Trans Union to weigh in on a legal dispute. *See* Response at 5 ("Gordon does not allege that Defendant was required to interpret or enforce a settlement agreement."). Instead, Gordon maintains that she "provided [Trans Union] with specific factual information calling into question the continued reporting of the LVNV tradeline" and gave Trans Union "identifying information (e.g., case number(s)) sufficient to locate and verify those facts." Response at 5. But this isn't true. Gordon's Second Dispute Letter doesn't attach the Confidential Settlement Agreement, *see generally* Second Dispute Letter, nor does she allege that she provided it to Trans Union, *see generally* Amended Complaint. And the dockets she identified in her second Dispute Letter don't contain the Confidential Settlement Agreement at all. *See* MJP at 5 n.5 ("Neither the docket in case number 24-cv-23593 nor in case number 24-cv-20045 includes a copy of Ms. Gordon's Settlement Agreement with LVNV").[5] Gordon doesn't address this deficiency in her Response, and instead (wrongly) maintains that she "provided [Trans Union] with information capable of independent verification." Response at 6. She didn't.[6]

**III. Leave to Amend**

In her Response, Gordon requests further "leave to amend" her Amended Complaint. Response at 7. She insists that "[a]ny perceived deficiency could be cured through amendment," without any argument as to why that would be the case. *Ibid.* Still, we "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). So, we grant Gordon leave to amend her Amended Complaint to plead additional facts that might remedy the deficiencies we've highlighted

---

[5] We may take judicial notice of the public dockets of federal judicial proceedings. *See Griffin v. Verizon Comm'ns Inc.*, 746 F. App'x 873, 876 (11th Cir. 2018) ("The documents submitted by Verizon are from the public dockets of federal judicial proceedings. That being the case, they are not subject to reasonable dispute, and the district court did not err by taking judicial notice of them.").

[6] The unavailability of the Confidential Settlement Agreement poses another problem for Gordon: An FCRA claim is only actionable if the alleged inaccurate information is "objectively and readily verifiable[.]" *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1367 (11th Cir. 2024). And because the Confidential Settlement Agreement was never available to Trans Union, it had no way to "objectively and readily" verify Gordon's claim that her accounts had been settled. *Ibid.*

here. We do so, however, with a word of caution. Because Trans Union waited six months after the pleadings closed to file its MJP, the record in this case has developed considerably since, and both parties (we're sure) have learned pertinent information about how Trans Union maintained Gordon's credit file vis-à-vis the LVNV Accounts. If Gordon chooses to file a second amended complaint—and if that pleading contains allegations Gordon's counsel knows to be false—those allegations could be ground for Rule 11 sanctions. *See* FED. R. CIV. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: the factual contentions have evidentiary support[.]").

## CONCLUSION

We therefore **ORDER and ADJUDGE** as follows:

1. Trans Union's Motion for Judgment on the Pleadings [ECF No. 43] is **GRANTED**.
2. Gordon may file a second amended complaint addressing the deficiencies identified in this Order by **August 31, 2026**.
3. Trans Union's First Motion for Summary Judgment [ECF No. 83] is **DENIED** ***as moot***.
4. Gordon's First Motion for Partial Summary Judgment [ECF No. 84] is **DENIED** ***as moot***.

**DONE AND ORDERED** in the Southern District of Florida on August 17, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record